## SUPREME COURT.

The Manhattan Gas Light Company, appellants, agt.
Charles Ely, respondent.

Where a *surety* signs with his principal the usual application to a *gas light company* for a supply of gas at a designated house, he is only liable to the company for the gas furnished there to his *principal*. He is not liable for any gas furnished to the *successor of the principal*, after a change in the proprietorship of the house, even though the company has had *no notice* of a change of proprietors.

*New York General Term, April*, 1863.

Sutherland, Ingraham and Clerke, *Justices.*

Appeal from a judgment entered against the plaintiffs, on report of a referee.

Edward Fitch, *for appellants.*

Luther R. Marsh, *for respondent.*

By the court, Sutherland, P. Justice.    This action was brought to recover the sum of $578.58 for gas supplied one H. S. Crocker, from the 20th January, 1860, to the 18th of February, 1860, and for rent of meter during that time. The action was brought against the defendant as surety.

The complaint alleges that Crocker applied to the plaintiffs to be supplied with gas light and meter; that his application was in the following words:

" *To the Manhattan Gas Light Company:* The subscriber wishes to be supplied with gas light and meter in the premises No. — in Gramercy Park street, occupied as the Gramercy Park House, and hereby agrees to pay for the same on the usual terms of the company.   Succeeds Mr. Davis from this date.                    H. S. Crocker.

" Charles Ely, *Surety.*

" New York, *February* 18, 1856."

—and that thereby the said Charles Ely became and was surety for the payment by the said H. S. Crocker for all sums which might be due and owing by him for gas light and meter furnished pursuant thereto.

The answer insists upon the statute of frauds as a defence to the action; and as a further defence denies that the plaintiffs, from the 20th day of January, 1860, to the 18th day of February, 1860, supplied the said Crocker with the quantity of gas mentioned, or with any gas whatever, or with any meter, as in the complaint stated. And the defendant alleges in the answer that the plaintiffs did not supply Crocker with any gas after the 8th day of June, 1859; that before the day last aforesaid, Crocker ceased to be proprietor of Gramercy Park hotel, and that since that time the gas had been furnished to C. W. Woodhull, who then became the proprietor of the hotel.

On the trial before a referee, the defendant admitted that the plaintiffs had furnished the Gramercy Park house with the quantity of gas mentioned in the complaint during the time mentioned in the complaint, but contested his liability to pay for the gas so furnished.

It appeared on the trial before the referee, and the referee found as matters of fact, that Crocker had paid for all the gas furnished for the Gramercy Park house from the time of the execution of the written instrument mentioned in the complaint, to the month of June, 1859; that in June, 1859, Crocker ceased to be the occupant and landlord of said house, when Charles W. Woodhull succeeded him as occupant and landlord of the house, and continued such landlord and occupant up to the 20th day of February, 1860; that after Woodhull succeeded Crocker, and during the time Woodhull was such landlord and occupant, the plaintiffs furnished gas for the house, as they had done before, the bills therefor having been presented to Woodhull at the house and paid by him down to the 20th day of January, 1860; that weekly bills for gas from 20th January, 1860, to the 18th February, 1860, (being for four weeks,) were made out by the plaintiffs in the following form:

"NEW YORK, 1860.

"Mr. H. S. Crocker to the Manhattan Gas light Company, Dr. For gas consumed from January 20 to January 27." (Then stating in detail the amount of gas for the week.)

—that for the first three of these bills the agent of the plaintiffs received the checks of Woodhull and receipted the bills; that the checks were duly presented for payment and not paid; that the last of said bills had not been paid in any manner; that the gas bills for the house were payable weekly; that there was, at no time, any sign on or about the Gramercy Park house designating who was the landlord thereof; that the general bills of the house for supplies, expenses, &c., while Woodhull was landlord, were made out to him and in his name.

On these facts the referee came to the conclusion that the defendant was not liable for the gas claimed in the complaint, assuming the legal validity of the defendant's agreement as set forth in the complaint.

On the facts found, it is clear that the referee came to the correct conclusion. The first ground or reason stated by the referee for this conclusion was sufficient to authorize it.

By signing the written instrument set out in the complaint as security, the defendant undertook to pay for gas and meter supplied to Crocker at the Gramercy Park house, if Crocker did not pay. He did not undertake to pay for gas furnished to Woodhull, or to any other person than Crocker. The gas furnished for the Gramercy Park house during the time mentioned in the complaint was in fact furnished to Woodhull, as the landlord or proprietor of the house.

It is immaterial in this case, between the plaintiffs and the surety, whether the plaintiffs had notice of the change in the proprietorship of the house or hotel, or whether, as between the plaintiffs and Crocker, on the facts found by the referee, Crocker would be liable, on the ground that

he did not give notice to the plaintiffs of the change of proprietorship, inasmuch, as by no reasonable construction of the defendant's undertaking as security could he be held responsible for any default of Crocker in not giving such notice.

The undertaking of the defendant as surety was to be responsible for any default of Crocker in not paying for the gas furnished him. He did not undertake to be responsible for any default of Crocker in not giving notice of any change of the proprietorship of the hotel.

The referee did not pass upon the question, whether the undertaking of the defendant was void by the statute of frauds. It is not necessary for us to pass upon it, or any other question in the case.

I think the judgment should be affirmed, on the ground alone above stated.